IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHIRLEY ISON-NEWSOME, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-2805-L-BH |
| | § | |
| JPMORGAN CHASE BANK, | § | |
| NATIONAL ASSOCIATION, | § | |
|     Defendant. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, *Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support*, filed February 16, 2023 (doc. 12), should be **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND

Shirley Ison-Newsome (Plaintiff) sues JPMorgan Chase Bank, N.A. (Defendant) for the reimbursement of funds fraudulently wired from her account through a scam perpetuated by foreign actors. (*See* doc. 11.)[2]

Plaintiff is an elderly individual with a checking account at Defendant. (*Id.* at 3.) The account is governed by the Chase Deposit Account Agreement and Privacy Notice (DAA), and has a provision relating to account withdrawals and transfers:

> We may subtract from your available balance the amount of any check or other item that we receive throughout the day that you or any person you authorized, created or approved. We may require you or any person you authorize to provide us with identification, documentation or information that's acceptable to us before allowing the transaction. If check writing is not an available feature of your account, we will not issue you checks, and you are not permitted to write checks drawn on your account. We will not pay checks if you attempt to do so.

---

[1] By *Order of Reference* filed February 21, 2023 (doc. 14), this motion was referred for recommendation.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

(docs. 11 at 11; 12-1 at 7-33.)

On or about February 24, 2022, Plaintiff was contacted by "scammers" who convinced her that they were representatives of Defendant and Microsoft, her computer had been hacked, her funds were being used for illegal activities abroad, and she faced severe consequences if she did not follow their instructions. (doc. 11 at 3-4.) She provided them "with the means to access her account and to initiate a wire transfer" of $51,786 to an account held outside the United States. (*Id.* at 4.) Defendant identified the wire transfer as potentially fraudulent. (*Id.*) Its representative contacted Plaintiff to verify the transaction; he asked whether the transaction was valid and whether she understood that the money could not be recalled once it left her account, but he did not advise her that Defendant had detected fraudulent behavior in connection with the transaction. (*Id.*) "[U]nder severe duress from the scammers and without the knowledge that [Defendant] suspected fraud and would be able to assist her," Plaintiff "indicated her initial assent to the transaction in an attempt to save herself from the consequences threatened by the scammers." (*Id.*)

The next morning, Plaintiff went to one of Defendant's bank branches and informed its Relationship Manager of the fraudulent wire transfer. (*Id.*) Relationship Manager told Plaintiff that the wire transfer was "successfully thwarted," her account was frozen pending an investigation, and she would receive forms from Defendant's fraud office. (*Id.* at 4-5.) She also opened a new checking account for Plaintiff. (*Id.* at 4.) That same day, Defendant's customer service office sent Plaintiff a letter explaining that it had received her request to recall the wire transfer, but there was no need to recall it because it had been canceled. (*See id.* at 5; doc. 11-1.) On February 28, 2022, Plaintiff called Defendant to report that she had not received the forms from its fraud office. (doc. 11 at 5.) On March 1, 2022, she also visited with Relationship Manager, who informed her that the forms packet was "in progress." (*Id.*) Plaintiff received a letter from Defendant on March 2, 2022, which stated that the $51,786 wire transfer had been canceled and that she should contact Defendant. (*Id.* at 5.) When

2

Plaintiff called Relationship Manager about the letter, she was advised that Defendant knew of the situation and there was no need to call Defendant to "follow up." (*Id.*)

On March 8, 2022, Plaintiff contacted Defendant because she was unable to access her account online due to her account being frozen, and she was provided a new username and password. (*Id.*) Upon accessing her online account, she discovered that the account balance had decreased by $51,786. (*Id.*) Plaintiff was later told that the wire transfer "had in fact gone through," and that "the freeze was not maintained after [Defendant] created her new account." (*Id.*) On March 9, 2022, Plaintiff received a message in her online account that showed "the hold on the transfer request as well as the cancellation of the wire request, both dating back to February 25, 2022." (*Id.* at 6.) Defendant has refused to reimburse her for the fraudulent wire transfer. (*Id.* at 2.)

On November 8, 2022, Plaintiff sued Defendant in state court. (doc. 1-4 at 1-10.) After the case was removed to federal court on December 15, 2022, Plaintiff filed an amended complaint, which asserts claims against Defendant for negligence, negligent undertaking, fraudulent misrepresentation, fraud by nondisclosure, and breach of contract. (doc. 11 at 1, 6-12.) It seeks $51,786 in actual damages, pre- and post-judgment interest, and court costs. (*Id.* at 12.)

## II.    MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's suit under Fed. R. Civ. P. 12(b)(6). (doc. 12.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) *cert. denied*, 530 U.S. 1229 (2000). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," however. *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). If "matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 57," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents attached to a motion to dismiss or to a response to a motion to dismiss "are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003); *see Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008) (finding that reliance on documents attached to a response to a motion to dismiss was appropriate where the documents were "sufficiently referenced in the complaint"). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Attachments falling under these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, the February 25, 2022 letter from Defendant about the cancellation of the wire transfer is attached to Plaintiff's amended complaint. (*See* doc. 11-1.) It is therefore considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. Defendant attached to its motion to dismiss a copy of the DAA and the Personal Signature Card associated with Plaintiff's bank account. (doc. 12-1 at 7-33, 37.) Because the documents are either referenced in Plaintiff's amended complaint or are central to her claims, they are considered part of the pleadings. *See Collins*, 224 F.3d at 499; *Norris*, 500 F.3d at 461 n.9.

Defendant also attached with its motion to dismiss the declarations of its employees. (doc. 12-1 at 4-5, 35.) These documents are not referenced in Plaintiff's amended complaint and are not matters of public record, so they are not part of the pleadings for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, No. 3:13-CV-2417-B, 2014 WL 4055473, at *4 n.3 (N.D. Tex. Aug.

5

15, 2014) (considering documents attached to a motion to dismiss as part of the pleadings only as long as they were central to the plaintiff's claim and referenced in the complaint). Because the declarations are not part of the pleadings for purposes of the motion to dismiss, and they are not being considered for purposes of this motion, it is unnecessary to treat the motion to dismiss as a summary judgment motion.

A.      **Preemption**

Defendant moves to dismiss Plaintiff's tort claims, arguing they are preempted by Article 4A of the Texas Business and Commerce Code. (doc. 12 at 8.)

Texas[3] has adopted Article 4A of the Uniform Commercial Code (UCC) and codified it in the Texas Business and Commerce Code. *See* Tex. Bus. & Com. Code § 4A.101, *et seq.* It applies to "funds transfers,"[4] also known in the banking industry as "wholesale wire transfers." *Am. Airlines Employees Fed. Credit Union v. Martin*, 29 S.W.3d 86, 98 (Tex. 2000) (citing Tex. Bus. & Com. Code § 4A.102, cmt.). "Article 4A establishes 'precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits of liability' regarding funds transfers." *Sols. v. First State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132, at *3 (E.D. Tex. Apr. 16, 2020) (quoting *id.* at § 4A.102, cmt.). "Where a legal dispute arises from a funds transfer, the parties should look first to Article 4A for guidance in bringing and resolving their

---

[3] "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Here, this dispute concerns a wire transfer transaction from a Texas resident's bank account that was initiated in Texas, and representations made in Texas. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."). Further, the parties appear to agree that Texas law governs this dispute, as they cite to Texas law and Fifth Circuit cases applying Texas law. (*See* docs. 12, 16.); *see also CIMC Vehicles Grp. Co. v. Direct Trailer, LP*, No. CIV.A. H-10-709, 2012 WL 4017985, at *9 (S.D. Tex. Aug. 24, 2012), *adopted by* 2012 WL 4018200 (S.D. Tex. Sept. 12, 2012) ("By uniformly relying on Texas law, the parties agree that it applies to their controversy. Absent any indication in the record that any other law should apply, the court applies Texas law.").

[4] A "funds transfer" is a "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order" and "completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." Tex. Bus. & Com. Code § 4A.104(1).

claims." *Consorcio Industrial de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2111-K, 2012 WL 13019678, at *2 (N.D. Tex. July 12, 2012) (citations omitted). This is because Article 4A was "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." Tex. Bus. & Com. Code § 4A.102 cmt.

Although Article 4A does not automatically displace all common law claims involving wire transfers, a plaintiff is restrained from bringing a non-Article 4A claim when the claim would "create rights, duties and liabilities inconsistent with" Article 4A, or when the circumstances giving rise to that claim are directly addressed or specifically covered by the provisions of Article 4A. *Id.*; *see Consorcio*, 2012 WL 13019678 at *3 (citing *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274-75 (11th Cir. 2003)); *see also Wright v. Citizen's Bank of E. Tennessee*, 640 F. App'x 401, 406-07 (6th Cir. 2016) ("Article 4A displaces common-law claims relating to wire transfers if the claims arise out of a situation addressed by Article 4A or attempt to create rights, duties, or liabilities inconsistent with Article 4A."). "However, where the circumstances differ from the situations outlined in [it], [Article] 4A is not the 'exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer.'" *Consorcio*, 2012 WL 13019678, at *2 (quoting *Regions Bank*, 345 F.3d at 1275-76); *see also JESCO Constr. Corp. v. Wells Fargo Bank*, N.A., No. 1:20CV147-HSO-JCG, 2021 WL 9629459, at *8 (S.D. Miss. Mar. 11, 2021) ("Courts in other jurisdictions have held that a plaintiff may resort to common law remedies to seek redress for an alleged harm arising from a funds transfer where Article 4A does not protect against the underlying injury or misconduct.") (collecting cases).

To determine whether a claim is "covered by particular provisions" of Article 4A, courts look to whether "additional facts or conduct potentially lying outside the scope of [Article 4A] are at issue." *Consorcio*, 2012 WL 13019678 at *3. "If the conduct at issue or factual circumstances of the claim

are 'not addressed squarely by the provisions of the article, courts are more likely to find that preemption does not apply.'" *3T Oil & Gas Servs., LLC v. JPMorgan Chase Bank, N.A.*, No. A-18-CV-131-LY, 2018 WL 5018483, at *3 (W.D. Tex. Oct. 16, 2018), *adopted by* 2018 WL 6220139 (W.D. Tex. Nov. 1, 2018) (quoting *id.*).

### 1. *Negligence, Negligent Undertaking, and Fraud by Nondisclosure*

Defendant argues that Plaintiff's negligence, negligent undertaking, and fraud by nondisclosure claims are preempted by Article 4A because they center on whether it properly processed the wire transfer in accordance with its Article 4A duties. (doc. 12 at 10.)

Article 4A sets forth a detailed scheme concerning a bank's obligations in the issuing and acceptance of payment orders. *See* Tex. Bus. & Com. Code §§ 4A.201-.212. "Whether the bank or customer bears the risk of loss for a fraudulent wire transfer is determined by the interlocking provisions of" Tex. Bus. & Com. Code § 4A.202, § 4A.203, and § 4A.204. *Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*, --- F.Supp.3d ----, No. 22-CV-3361 (LJL), 2023 WL 35176, at *7 (S.D.N.Y. Jan. 4, 2023). A "receiving bank"[5] that accepts a "payment order"[6] issued in the name of its customer as "sender"[7] must refund any payment made on that payment order if the payment order was not "authorized" or "effective." Tex. Bus. & Com. Code § 4A.204(a). "A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." *Id.* § 4A.202(a). A "payment order received by the receiving bank is effective as the order of the customer" if "a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the

---

[5] A "receiving bank" is "the bank to which the sender's instruction is addressed." Tex. Bus. & Com. Code § 4A.103(a)(4).

[6] A "payment order" is an "instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to . . . pay, a fixed or determinable amount of money to a beneficiary." Tex. Bus. & Com. Code § 4A.103(a)(1).

[7] A "sender" is "the person giving the instruction to the receiving bank" to send the funds. Tex. Bus. & Com. Code § 4A.103(a)(5).

customer as sender will be verified pursuant to a security procedure[8]," that security procedure "is a commercially reasonable method of providing security against unauthorized payment orders," and the bank "proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer." *Id.* § 4A.202(b). Even if the payment order is deemed effective, "[t]he receiving bank is not entitled to enforce or retain payment of the payment order if the customer proves that the order was not caused, directly or indirectly, by a person: (A) entrusted at any time with duties to act for the customer with respect to payment orders or the security procedure; or (B) who obtained access to transmitting facilities of the customer or who obtained, from a source controlled by the customer and without authority of the receiving bank, information facilitating breach of the security procedure, regardless of how the information was obtained or whether the customer was at fault." *Id.* § 4A.206(a)(2).

Here, Plaintiff asserts that Defendant acted negligently by failing to inform her that the wire transfer was fraudulent, not asking more about the transaction to help identify the scammers' fraud, lifting the account freeze and allowing the wire transfer to proceed, not using "reasonable care in the course of recalling the funds," and failing to otherwise "reasonably act in defense of the funds." (doc. 11 at 6-9). Her fraud by nondisclosure claim is based on Defendant's failure to disclose material facts regarding its suspicion of fraud and its ability to prevent the fraudulent wire transfer when handling the wire transfer order. (*Id.* at 10.) These claims are based on the wire transfer itself and seek to hold Defendant liable for processing her transaction request, which is specifically addressed by Article4A. *See* Tex. Bus. & Com. Code §§ 4A.201-.212; *see, e.g., First State Bank of Brownsboro*, 2020 WL

---

[8] A "security procedure" is a "procedure established by agreement of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication." Tex. Bus. & Com. Code § 4A.201.

12991132, at *4 (holding that plaintiff's negligence, negligence per se, and conversion claims "are preempted by Article 4A to the extent they are based on the Bank's conduct in processing the automated funds transfers"); *Squeeze Me Once, LLC v. SunTrust Bank*, No. CV 19-787-JWD-RLB, 2020 WL 12968001, at *10 (M.D. La. Aug. 3, 2020) ("The rights and obligations of SunTrust concerning how the wire transfer was conducted and the actions it was obligated to take as the beneficiary bank are set forth in the UCC, and therefore SMO's negligence claims concerning the wire transfer itself are preempted by Article 4A.").

Because Plaintiff's negligence, negligent undertaking, and fraud by nondisclosure claims are "addressed squarely" by the provisions of Article 4A, they are preempted.[9] Defendant's motion to dismiss these claims should be granted, and the claims should be dismissed.[10]

### 2.    *Fraudulent Misrepresentation*

Defendant argues that Article 4A also preempts Plaintiff's fraudulent misrepresentation claim because it is based on alleged representations about processing the unauthorized wire transfer. (doc. 12 at 10.)

As discussed, if a common law claim is inconsistent with Article 4A or is expressly addressed by the article's provisions, the claim is preempted and must be dismissed. *See* Tex. Bus. & Com. Code § 4A.102 cmt. "In the context of Article 4A, courts have held that the analysis with respect to negligent or intentional misrepresentation claims depends upon the facts and circumstances of each

---

[9] Plaintiff's response to the motion to dismiss states that even if her claims are subject to Article 4A preclusion, they should not be dismissed because "Defendants have failed to abide by the responsibilities Article 4A places on them." (doc. 16 at 9.) To the extent Plaintiff attempts to assert an Article 4A claim, it is not part of the pleadings to be considered for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473 at *4 n.3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552 at *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). Plaintiff has not sought or been granted leave to amend her complaint to add an Article 4A claim, and she has not shown that Defendant consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2).

[10] Because Defendant's motion to dismiss Plaintiff's negligence, negligent undertaking, and fraud by nondisclosure claims on preemption grounds should be granted, it is unnecessary to reach its alternative grounds for dismissing those claims.

case." *JESCO Constr. Corp.*, 2021 WL 9629459, at *10 (citing cases). Courts have generally recognized that Article 4A does not preempt common law claims arising from conduct that occurred outside the wire transfer process. *See 3T Oil*, 2018 WL 5018483, at *3; *First State Bank of Brownsboro*, 2020 WL 12991132, at *4 ("[T]o the extent [plaintiff's] claims are based on alleged conduct occurring before or after the automated funds transfer, they are not preempted."); *JESCO Constr. Corp.*, 2021 WL 9629459, at *10 (holding that Article 4A did not displace plaintiff's negligent or intentional misrepresentation claims because they were premised on representations made after the completion of the unauthorized transfers); *see also Pedersen v. MidFirst Bank*, 527 F. Supp. 3d 188, 194 (N.D.N.Y. 2021) (finding plaintiffs' common law claims based on defendant's actions before and after the processing of the wire transfer were not preempted by Article 4A). In *3T Oil*, the plaintiff sued for negligent misrepresentation, alleging that after the wire transfer was completed, the bank represented that the funds had been flagged and would not leave the bank, and the plaintiff relied on those false representations to its detriment. *See* 2018 WL 5018483, at *3. The court held that the misrepresentation claim was not preempted by Article 4A because it "is not based on the wire transfer itself, or on any claim that [the bank] mishandled the wire transfer, but rather is based on representations made *after* the wire transfer was completed." *Id.* (emphasis original).

Here, Plaintiff alleges that the day after the February 24, 2022 wire transfer request was processed, and thereafter, Relationship Manager made representations that the wire transfer "had been prevented and that her money remained in her account". (doc. 11 at 9.) Defendant further represented "it would take necessary steps to secure Plaintiff's account, ensure the wire transfer was not processed, and continue to safeguard her assets." (*Id.*) Like the misrepresentation claim in *3T Oil*, Plaintiff's fraudulent misrepresentation claim is based on representations allegedly made after the processing of the wire transfer and is not preempted by Article 4A. *See* 2018 WL 5018483, at *3.

11

Defendant's motion to dismiss Plaintiff's fraudulent misrepresentation claim on Article 4A preemption grounds should be denied.

B.     **Economic Loss Rule**

Defendant moves to dismiss Plaintiff's fraudulent misrepresentation claim as barred by the economic loss doctrine. (doc. 12 at 6.)

"Under Texas law, the independent injury rule—also referred to as the economic loss rule—precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties." *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). To determine whether the economic loss rule applies, courts consider: (1) whether the claim is for breach of a duty created by contract, as opposed to a duty imposed by law; and (2) the nature of the alleged injury. *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citation omitted). Several courts in the Fifth Circuit have held that this rule does not apply to fraud claims. *See id.* at 764; *Experian Info. Solutions, Inc. v. Lexington Allen, L.P.*, No. 4:10-CV-144, 2011 WL 1627115, at *12 (E.D. Tex. Apr. 7, 2011) ("The economic loss rule does not apply to fraud claims.") (collecting cases); *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, No. CIV. A. 1:07-CV-111, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009) (holding that the economic loss doctrine did not bar a fraudulent misrepresentation claim); *Utilities Optimization Grp., LLC v. Temple-Inland, Inc.*, No. 1:08-CV-68-TH, 2009 WL 10685265, at *3 (E.D. Tex. Mar. 24, 2009) ("The lone exception to the independent injury doctrine is that a party may recover tort damages for fraud, notwithstanding the fact that such damages are purely economic losses, identical to those recoverable under a breach of contract theory.") (citation omitted). This is because "parties to a contract have an independent legal duty not to commit the intentional tort of fraud." *Cardinal Health Solutions*, 2009 WL 150942 at *20; *see also Total Rx Care, LLC v. Great N. Ins. Co.*, No. 3:16-CV-2965-B, 2017 WL 3034083, at *4 (N.D. Tex. July 17, 2017) ("A duty not to

commit fraud is not created by contract, but is instead "a duty imposed by the common law of Texas.") (quoting *Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp.2d 712, 717 (S.D. Tex. 2000)).

The economic loss rule does not bar Plaintiff's fraudulent misrepresentation claim, and Defendant's motion to dismiss the claim on this ground should be denied.

C.  **Failure to State a Claim**

Defendant moves to dismiss Plaintiff's fraudulent misrepresentation and breach of contract claims for failure to state a claim upon which relief may be granted. (doc. 12 at 12, 17.)

1.  *Fraudulent Misrepresentation*

Defendant argues that Plaintiff fails to state a fraudulent misrepresentation claim and to meet Rule 9(b)'s heightened pleading standard. (doc. 12 at 14.)

The elements of fraudulent misrepresentation in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (per curiam) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). "A false representation is material if a reasonable person would attach importance to and be induced to act on the information." *Id.* at 1033 (citing *Citizens Nat'l Bank v. Allen Rae Invs.*, 142 S.W.3d 459, 478-79 (Tex.App.—Fort Worth 2004, no pet.)).

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with

13

particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179). A motion to dismiss for failure to plead fraud with particularity under Rule 9(b) is treated the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

Here, Plaintiff alleges that "on February 25th, 2022 and thereafter," Relationship Manager represented that the wire transfer "had been prevented and that her money remained in her account," and that through various letters and communications between February 25 and March 9, 2022, Defendant further represented that "it would take necessary steps to secure [her] account, ensure the wire transfer was not processed, and continue to safeguard her assets." (doc. 11 at 9.) She alleges that these representations were false and material, and that Defendant "made these representations either with knowledge of their falsity or with reckless disregard for their truth, and with the knowledge and intent that Plaintiff rely and act upon the representations." (*Id.*) She also alleges that she relied on these representations to her detriment, as she abstained from taking "other steps to safeguard her assets and prevent the loss of money from her account." (*Id.* at 9-10.) Taken as true and viewed in the light most favorable to Plaintiff, as they must, her allegations are sufficient to state a fraudulent misrepresentation claim with particularity against Defendant. *See Twombly*, 550 U.S. at 570.

Defendant argues that Plaintiff cannot show that she reasonably relied on the alleged misrepresentations because they occurred after she authorized the wire transfer and acknowledged that the wire could not be recalled once processed. (doc. 12 at 16.) The inquiry at this stage is not to

evaluate whether Plaintiff will ultimately prevail on her claims or whether recovery is very remote and unlikely, but whether her factual allegations raise her right to relief above the speculative level. *Twombly*, 550 U.S. at 555-56. Because it is possible for Plaintiff to prove some set of facts that would allow her to establish that she reasonably relied on Defendant's representations after initially authorizing the wire transfer, she has stated a plausible fraudulent misrepresentation claim.

The motion to dismiss the fraudulent misrepresentation claim for failure to plead a plausible claim for relief should be denied.

### 2. Breach of Contract

Defendant argues that Plaintiff has failed to sufficiently plead a claim for breach of contract. (doc. 12 at 17.)

"The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). "A breach occurs when a party fails or refuses to do something he has promised to do." *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Here, Plaintiff alleges that an agreement between her and Defendant was established when she opened an account with it "under which [it] agreed to process only those transactions that have been authorized by [her]." (doc. 11 at 3, 11.) She alleges that Defendant breached this agreement "by processing a transaction despite possessing affirmative knowledge that the transaction was not authorized by Plaintiff at the time the transaction was processed" or, in the alternative, "by misrepresenting to Plaintiff that the transaction had not been processed by February 25 and that the money in question remained in her account." (*Id.* at 11.) She claims she "suffered damages in the

15

form of money lost" as a result. (*Id.*) These allegations, when viewed in the light most favorable to her, sufficiently state a plausible claim for breach of contract. *See Twombly*, 550 U.S. at 570.

Defendant argues that the contract claim fails because the DAA expressly absolves it from liability for anything it does when following Plaintiff's instructions, and she admits that she initially authorized Defendant to process the wire transfer. (doc. 12 at 18.) As discussed, the amended complaint alleges that "the transaction was not authorized by Plaintiff *at the time the transaction was processed*." (doc. 11 at 11 (emphasis added).) Plaintiff alleges that after instructing Defendant to cancel the wire request, she was told that the wire transfer was halted, her account was frozen, and that she did not need to do anything further to recall the wire. (*Id.* at 4-6.) She also alleges that Defendant later allowed the wire transaction to go through despite her instruction to halt it. (*Id.* at 6.)

Because Plaintiff has sufficiently pled a breach of contract claim against Defendant, the motion to dismiss this claim should be denied.

### III.   RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED in part** and **DENIED in part**, and Plaintiff's negligence, negligent undertaking, and fraud by nondisclosure claims should be **DISMISSED with prejudice**. Plaintiff's fraudulent misrepresentation and breach of contract claims should remain pending for trial.

**SO RECOMMENDED** on this 21st day of July, 2023.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE